# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TUESDAE STAINBROOK, D.O., M.P.H., MARY SIMPSON, M.B.A., and JONATHAN POPE, M.D., Ph.D., <br><br>Plaintiffs,<br><br>v.<br><br>BROOKVILLE HOSPITAL, CLEARFIELD HOSPITAL, DUBOIS REGIONAL MEDICAL CENTER, ELK REGIONAL HEALTH CENTER, INC., GARY OTT, M.D., PENN HIGHLANDS HEALTHCARE, and WOMEN'S CARE OF WESTERN PENNSYLVANIA, LLC,<br><br>Defendants. | C.A. No.: 1:16-cv-00244<br><br>**FILED UNDER SEAL** pursuant to 31 U.S.C. **§** 3729 *et seq.*<br><br>JURY TRIAL DEMANDED |

## RELATORS' FEE APPLICATION AND MEMORANDUM IN SUPPORT

Tuesdae Stainbrook, D.O., Mary Simpson, and Jonathan Pope, M.D. ("Relators"), hereby submit this application for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. §3730(d)(1) and (2). As discussed in more detail below, Relators seek an award of attorneys' fees in the amount of $176,933.75 and expenses in the amount of $449.78, plus any additional fees and costs incurred in connection with this fee application.

## INTRODUCTION

This case involves false claims that Relators allege were submitted to federal health insurance programs by DuBois Regional Medical Center, now known as Penn Highlands DuBois ("Penn Highlands"). They included claims that resulted from illegal referral arrangements with physician groups and other fraudulent billing schemes.

Relators alleged that Penn Highlands entered into an arrangement with Dr. Gary Ott and Women's Care of Western Pennsylvania which resulted in payments in excess of $3.2 million for sham consulting agreements, and for the sale of Dr. Ott's medical practice. Relators alleged that payments under this arrangement were in fact designed to induce and retain referrals from Dr. Ott and the Women's Care of Western Pennsylvania, and that the arrangement violated the Stark Law and the Anti-Kickback Statute (AKS). Relators alleged that claims for payment submitted by Penn Highlands pursuant to such referrals constituted false claims.

Relators also alleged that Penn Highlands improperly billed procedures performed by mid-level providers as being "incident to" physician services, that Penn Highlands billed services as Rural Health Clinics that were not actually provided at certified Rural Health Clinics, that Penn Highlands billed for certain "swing bed" services that were not medically necessary or otherwise proper.

*Filing of complaint under seal and investigation*

Relators filed this action on October 11, 2016, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq*. The complaint was served on the United States Attorney's Office for the Western District of Pennsylvania and the Attorney General of the United States, along with a Disclosure Statement and all material evidence in the possession of Relators. While under seal, the United States interviewed the Relators and extensively investigated the allegations in the complaint.[1] As part of the Relators' disclosure of material evidence, Relators' counsel provided documents, legal research and identified witnesses to assist with the government's investigation.

Over several years, the United States filed numerous motions to extend the seal period

---

[1] Due to personnel turnover in the U.S. Attorney's Office, additional relator interviews were necessary to maintain continuity in the investigation.

in furtherance of their investigation. Throughout the seal period, Relators and their counsel cooperated with the government and assisted in their investigation by supplementing their disclosures, assisting with CID requests, and frequently consulting with government lawyers.

In late 2019, the United States enlisted Relators' counsel and his staff to assist with the review and coding of the Penn Highlands' document production. And, in December of 2021 Relators' counsel spent several hours preparing questions for the United States for the planned oral examination of a potential third-party witness.

On August 25, 2020, Relators filed an Amended Complaint based upon additional information that Relators uncovered during the seal period. Specifically, the Relators identified a subsequent acquisition by Penn Highlands, in which it agreed to buy another medical practice, Life's Journey, from a former employee of Women's Care of Western Pennsylvania and entered into a multi-year employment agreement with her. Relators alleged that the payments grossly exceeded fair market value under this arrangement and were actually payments for referrals in violation of the Stark Law and the Anti-Kickback Statute.

*Settlement*

After 7 ½ years of investigation, on February 20, 2024, the United States filed a Notice of Election to Intervene, in Part, for Purposes of Settlement and to Decline to Intervene in Part. (Doc. No. 51). Specifically, the United States intervened to settle the claim that certain payments from Penn Highlands to Women's Care of Western Pennsylvania were actually payments for referrals in violation the Stark Law and the Anti-Kickback Statute.[2] The United States declined to intervene in the remaining allegations in the Complaint and Amended Complaint. Relators alleged that (a) Penn Highlands violated the Stark Law and Anti-Kickback

---

[2] Those payments were made pursuant to a Consulting and Medical Director Agreement dated July 1, 2009 that provided for the payment of $420,000 by Dubois Regional Medical Center to Gary Ott and Heather Sholtis, D.O, for past "employment services" performed between July 1, 2008, to June 30, 2009, prior to the effective date of that agreement.

Statute in the acquisitions of Women's Care of Western Pennsylvania and Life's Journey, (b) Penn Highlands improperly billed procedures performed by mid-level providers as being "incident to" physician services, (c) Penn Highlands billed services as Rural Health Clinics that were not actually provided at certified Rural Health Clinics, (d) Penn Highlands billed for certain "swing bed" services that were not medically necessary or were otherwise improper.

Shortly thereafter, the parties negotiated a settlement agreement. In the Settlement Agreement, Penn Highlands agreed to pay the United States a total of $735,000.00 in exchange for a dismissal of the Civil Action. The United States agreed to release Penn Highlands for the claims related to the <u>intervened</u> Stark Law and Anti-Kickback violations described above.

Significantly, when it came to the Relators, Penn Highlands insisted on a much broader release "from any liability to Relators arising from the filing of the Civil Action,"[3] covering both intervened and non-intervened claims.

While Penn Highlands appears to acknowledge that Relators are entitled to reasonable attorney's fees and expenses under the Act's fee-shifting provisions, counsel for Penn Highlands has suggested that it should only have to pay fees related to the claims in which the United States chose to intervene. This is incorrect. There is no such limitation.

In fact, at the time of settlement, there had been no adverse rulings or even any evidence in the record that any of the Relators' claims, intervened or not intervened, lacked merit – all of Relators' claims were viable. Having negotiated for a global release of both intervened and non-intervened claims, Penn Highlands cannot now refuse to compensate Relators counsel for time spent on non-intervened claims.

Because Penn Highlands is unwilling to pay Relators' attorneys' fees and expenses

---

[3] The release specifically excluded the Relators' claims for retaliation and statutory attorney's fees and expenses pursuant to 31 U.S.C. § 3730(d). The Relators' retaliation claims were withdrawn on June 7, 2024 (Doc. Nos. 57 & 59) and only Relators' attorney's fees and expenses claim remain outstanding.

4

claim, it is necessary for Relators to file this petition, seeking an award of reasonable attorneys' fees and expenses against Penn Highlands pursuant to 31 U.S.C. § 3730(d)(1) and (d)(2).

**ARGUMENT**

A. **Standards for fee awards.**

The False Claims Act provides that, upon settlement of an action in which the government has intervened, the relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). (Emphasis added). Regarding actions where the government declines to intervene, the Act affords the identical entitlement to reasonable attorneys' fees and costs.[4] 31 U.S.C. § 3730(d)(2). Because the United States intervened in part of the case, both of these provisions are applicable.

Unlike other fee-shifting statutes, an award of fees and expenses under the False Claims Act is mandatory, not discretionary. *United States ex rel. Singh v. Bradford Reg'l. Med Ctr.*, 2013 U.S. Dist. LEXIS 141835. ("…in a case where the government has intervened and the claims have been settled, the relators are entitled to a portion of the proceeds of the settlement and "shall also receive an amount for reasonable attorneys' fees and costs.") (Emphasis added.)

As with other fee-shifting statutes, the proper method for determining the amount of fees under § 3730(d) is the "lodestar method," which involves multiplying the number of hours

---

[4] Unlike many fee-shifting statutes, including the Fees Act, 42 U.S.C. § 1988, the False Claims Act contains no "prevailing -party" limitation for relators. Instead, Congress stated unequivocally that any "such person" who brings a qui tam action where the government recovers proceeds by way of settlement or judgment shall be awarded reasonable fees against the defendant(s). 31 U.S.C. § 3730(d)(1) and (2). The False Claims Act does not limit reasonable attorneys fees to claims in which the government intervened or on which relators prevailed. Rather, the triggering event for entitlement to attorneys' fees is recovery of money by the United States.

expended on the litigation by an appropriate hourly rate. *United States ex rel. Doe v. Pennsylvania Blue Shield*, 54 F. Supp. 2d 410, 413-14 (M.D. Pa. 1999). As explained by the Third Circuit,

> The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989). The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id*. at 720.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). By multiplying the number of hours expended on the litigation by the appropriate hourly rate, the Court arrives at the lodestar, which is presumed to be a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Doe*, 54 F. Supp. 2d at 414. A fee applicant satisfies his initial burden of proof "by introducing the legal bills and the testimony of counsel that the hours expended were reasonable," and it is not necessary for counsel to produce evidence showing why each hour billed was reasonable. *Id*. at 414.

It is well-established that, in an action against multiple defendants, the normal rule is that attorneys' fees are to be awarded jointly and severally against all defendants. *United States ex rel. Singh v. Bradford Reg'l. Med Ctr.*, 2013 U.S. Dist. LEXIS 141835. ("The fact that there are multiple Defendants in a civil case means that an award of fees would be made jointly and severally against all Defendants"). *See Kaseman v. District of Columbia*, 444 F.3d 637, 640, (D.C. Cir. 2006) (citing "the normal rule of joint and several liability for recoverable attorneys' fees"); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 786 F. Supp. 2d 110, 117 (D.D.C. 2011) ("The normal practice in assessing liability for attorneys' fees is that all defendants are jointly and severally liable.").

6

Finally, it is well-established that a fee applicant may recover for time spent litigating his right to recover attorneys' fees. *See Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998) ("fees for preparing a motion requesting costs and fees, or 'fees on fees,' are recoverable."); *United States ex rel. Singh v. Bradford Reg'l. Med Ctr.*, 2013 U.S. Dist. LEXIS 141835 ("a fee applicant may recover for time spent litigating his right to recover attorneys' fees."); *United States ex rel. Doe v. Pennsylvania Blue Shield*, 54 F. Supp. 2d 410, 414 (M.D. Pa. 1999) ("time expended by attorneys seeking an award of fees (sometimes called 'fees on fees') justifiably may be included in the application and the award"). Relators have included fees incurred to date and will supplement this petition to include any additional time spent litigating this fee petition.

B.     **The fees sought are extremely reasonable.**

    1.     **The hours expended are reasonable.**

As set forth in the declaration of Relators' attorney, Andrew M. Stone (Exhibit A), and the accompanying time records (Exhibits B and C), Relators' counsel, over the past eight years, has reasonably expended 234.35 hours investigating and assisting the government in the prosecution of this case.

As explained in the attached declaration of Relators' counsel, the hours for which payment is sought were reasonably expended in connection with the prosecution of this case, and Relators do not believe that Penn Highlands can reasonably challenge the number of hours as excessive, particularly given the length of this case, the novelty and importance of the issues presented, and the results obtained because of counsels' efforts.[5]

Moreover, the total amount of attorneys' fees requested is approximately 25% of the $735,000 settlement amount agreed to by Penn Highlands, which is well within the bounds of

---

[5] Should Penn Highlands challenge Relators' hours as excessive, Relators reserve the right to address any particular challenges in a reply brief, and to seek production of Penn Highlands' counsel's time records.

reasonableness. Finally, as discussed above, the Court is familiar the numerous extensions of the seal and the extensive nature of the investigation conducted and can judge whether the expenditure of 234.35 hours over eight years is reasonable.

2. **The hourly rates are reasonable.**

Counsel seeks to be compensated at the rate of $825 per hour. Mr. Stone has nationally recognized expertise under the False Claims Act. His biographical information is set out in the attached Declaration of Andrew M. Stone (Exhibit A) and is not repeated in this brief. Mr. Stone was admitted to practice in 1981 and has been litigating False Claims Act cases since 1994. Christine Stone has worked on False Claims Act cases as a paralegal and investigator for more than twelve years.

As set forth in his declaration, Mr. Stone's hourly rate of $825.00 per hour is consistent with those charged by other attorneys of similar skill and experience. As recently as February 2024, a defendant in another *qui tam* case in this district agreed to pay Mr. Stone at his current rate of $825 per hour. Last year, a defendant in yet another *qui tam* case paid Mr. Stone at the rate of $800 per hour and Ms. Stone at her rate of $200 per hour.

Finally, the reasonableness of Mr. Stone's hourly rate is also supported by the attached declaration of Frederick M. Morgan, Jr., a leading member of the False Claims Act bar. *See* Exhibit D.

3. **Relators are entitled to attorneys' fees and cost for all claims that are released in the Settlement Agreement.**

Penn Highlands' counsel has previously suggested that any fee award to Relators' counsel should be limited to work on the claim on which the United States intervened. Any assertion that Relators' fee award be limited to intervened claims is contrary to a plain reading

of the False Claims Act and the Settlement Agreement in this case.

The False Claims Act specifically provides for reasonable attorney's fees whenever the government recovers money by way of settlement or verdict and makes no distinction between intervened and non-intervened claims.[6] The False Claims Act plainly provides for reasonable expenses, attorneys fees and costs for both <u>intervened</u> and <u>non-intervened</u> claims.

In this case, Penn Highlands negotiated for a global release from Relators, insisting that Relators release not only the claim on which the United States intervened, but also those additional claims on which the United States declined to intervene. If Penn Highlands believed any of the claims lacked merit, it was free to litigate them. Instead, it insisted on a broad release of both intervened and non-intervened claims.

Several cases have held that a relator is entitled to reasonable fees for work on claims dismissed pursuant to a settlement, whether or not the government intervened or released the claims. See *United States ex rel. Fallon v. Accudyne Corp.*, 97 F. 3d 937, 938- 939 (7th Cir. 1996), *overruled on other grounds, Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 469 (2007); *United States ex rel Singbush v. Fla. Neurological Ctr.*, LLC, 2022 U.S. Dist. LEXIS 111475 (M. D. Fla., June 22, 2022); *United States ex rel. Hernandez v. Therapy Providers of Am., Inc.*, 2014 U.S. Dist. LEXIS 146551, at *13 (N.D. Ill. 2014) *United States ex rel. Averback v. Pastor Med. Assoc., P.C.*, 224 F. Supp. 2d 342 (D. Mass. 2002).

---

[6] Under § 3730(d)(1), <u>where the government proceeds</u> with an action, and recovers money by way of settlement or verdict, the Relator is entitled to an award of 15-25% of the proceeds. And, in addition "Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." In situations <u>where the government does not intervene,</u> § 3730(d)(2) provides that the Relator is entitled to receive a higher percentage of the recovery, and as in the intervened action, and "[s]uch person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."

4. **All of the requested fees were incurred litigating Penn Highlands' liability.**

As discussed above, in an action against multiple defendants, the normal rule is that attorneys' fees are to be awarded jointly and severally against all defendants. The present case provides no basis for departing from this rule. Even though other defendants are named and implicated in certain illegal transactions, Penn Highlands was involved in all the illegal conduct that resulted in false claims to the federal health insurance programs. Accordingly, nearly every hour of attorney time spent on this case related to the false bills submitted by Penn Highlands.[7]

C. **The expenses sought by Relators were reasonably incurred.**

In addition to attorneys' fees, 31 U.S.C. § 3730(d)(1) and (d)(2) requires defendants to pay the relators' reasonable expenses and costs. "The costs associated with litigation are generally recoverable if they are reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *United States ex rel. Singh v. Bradford Reg'l. Med Ctr.*, 2013 U.S. Dist. LEXIS 141835; *United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, 2002 U.S. Dist. LEXIS 26986, *75 (D.S.C. May 23, 2002). Recoverable costs and expenses thus include such items as court costs, expert witness fees, deposition transcripts, and travel costs. *See id.* at *75-79; *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999).

As set forth in the attached declarations, Stone Law Firm, LLC has incurred expenses of $449.78, *See* Exhibit C. All such expenses were reasonably incurred in this litigation and should be awarded against Penn Highlands.

---

[7] Relators' counsel has exercised billing judgment to eliminate any hours expended solely to establish Relators' retaliation claims. For example, counsel have excluded from this petition hours spent responding to Penn Highlands' request for settlement demands in connection with Dr. Stainbrook's and Dr. Pope's retaliation/employment claims. Additionally, Relators' counsel has exercised billing judgment by excluding the time for Mr. Stone's co-counsel, Mark Simpson who has agreed to waive his claim for attorney's fees.

## **CONCLUSION**

For all the reasons discussed above, Relators respectfully request that the Court award Stone Law Firm, LLC a total of $176,933.75 in fees and $449.78 in expenses, together with such additional amounts as are incurred through further litigation of this fee petition.

This 14 day of June, 2024.

Respectfully submitted,

/s/ Andrew M. Stone
Andrew M. Stone
(Pa. #35176)
Stone Law Firm, LLC
1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-2005
astone@stone-law-firm.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on June 14th, 2024, he served the foregoing RELATORS' FEE APPLICATION by electronic mail.

THOMAS C. RYAN, ESQ.
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
Thomas.Ryan@klgates.com

KAREN GAL-OR
Assistant United States Attorney
Joseph F. Weis, Jr., U.S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
karen.galor@usdoj.gov

*/s/ Andrew M. Stone*
Andrew M. Stone