# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA ex rel.  )
TUESDAE STAINBROOK, D.O.,  )
M.P.H., MARY SIMPSON, M.B.A., and  )
JONATHAN POPE, M.D., Ph.D.,  )
     Plaintiffs,  )
  )
vs.  )    C.A. No. 1:16-cv-00244
  )
BROOKVILLE HOSPITAL,  )
CLEARFIELD HOSPITAL, DUBOIS  )
REGIONAL MEDICAL CENTER,  )
ELK REGIONAL HEALTH CENTER,  )
INC., GARY OTT, M.D., PENN  )
HIGHLANDS HEALTHCARE, and  )
WOMEN'S CARE OF WESTERN  )
PENNSYLVANIA, LLC,  )
     Defendants.  )

# OPINION

## I.    INTRODUCTION

Presently before the Court are Relators' Motion for Attorney Fees and Expenses [ECF No. 60], Defendant's Brief in Opposition [ECF No. 64], and Relators' Reply Brief [ECF No. 67]. Relators seek an award of attorneys' fees and expenses in the amount of $199,061.25 under 31 U.S.C. §3730(d)(1) and (2).

For the reasons that follow, the Court orders Defendants to pay Relators $154,184.05. This sum represents the lodestar for the litigation phase, reduced by 25% to reflect Relators' degree of success, plus the full award for fees-on-fees and expenses.

## II.    BACKGROUND

1

On October 11, 2016, a five count qui tam Complaint was filed by Tuesdae Stainbrook, D.O., Mary Simpson, and Jonathan Pope, M.D. ("Relators"), on behalf of themselves and the United States of America, under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, alleging that Brookville Hospital; Clearfield Hospital; Dubois Regional Medical Center; Elk Regional Health Center, Inc.; Gary Ott, M.D.; Penn Highlands Healthcare; and Women's Care of Western Pennsylvania, LLC, ("Defendants") submitted false claims to Medicare and/or other federal health care payors for: (a) referrals that violated the Physician Self-Referral Law, 42 U.S.C. § 1395nn ("Stark Law") and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), as a result of; (b) the improper financial relationship between Penn Highlands and Dr. Ott and his obstetrics and gynecology ("OBGYN") practice, Women's Care of Western Pennsylvania, LLC; (c) procedures performed by mid-level providers, but improperly billed as being provided "incident to" physician services; (d) services billed as Rural Health Clinic services that were not actually provided at certified Rural Health Clinics; and (e) for certain "swing bed" services that were not medically necessary or otherwise proper. On October 21, 2016, Relators served the United States with a copy of the Complaint, along with the "written disclosure" required by 31 U.S.C. § 3730(b)(2).

Relators amended the Complaint on August 25, 2020, naming the same Defendants, along with Kelly Duckett, M.D. In the Amended Complaint, Relators alleged that Penn Highlands violated the Stark Law and the AKS by acquiring another OBGYN practice, Life's Journey OBGYN, P.C., owned by Dr. Duckett.

On February 20, 2024, the United States of America filed a Notice of Election to Intervene, in Part, for Purposes of Settlement and to Decline to Intervene, in Part—setting forth its partial

intervention as to claims against the named Defendants.[1] Specifically, intervening as to the claim that Defendants violated the False Claims Act by submitting false claims to Medicare and/or other federal health care payors for referrals that violated the Stark Law and the AKS, arising from the payment of $420,000 by Dubois Regional Medical Center to Gary Ott and Heather Sholtis, D.O, for "employment services". This payment was made under Section 6(e) of the Consulting, Medical Director and Related Services Agreement between Dubois Regional Medical Center and Women's Care of Pennsylvania, LLC. This conduct is referred to in the Settlement Agreement as the "Covered Conduct." ECF No. 67-1. The United States declined to intervene as to the remainder of the allegations and claims in Relators' Complaint and Amended Complaint. ECF No. 51 at 3.

On May 28, 2024 the parties filed a "Stipulation of Dismissal" averring that "The action is dismissed with prejudice as to Relators as to all claims in the Amended Complaint, except for (1) Relators' claims for attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and (2) Relators' claims for wrongful termination under 31 U.S.C. § 3730(h)." ECF No. 55. On June 7, 2024, Relators subsequently voluntarily dismissed claims for wrongful termination under 31 U.S.C. § 3730(h). ECF No. 57. Both motions were granted by this Court. ECF No. 58; ECF No. 59. Both motions expressly reserved Relators' application for attorneys' fees. On July 14, 2024, Relators filed the instant motion for attorneys' fees which was ultimately contested.

## III.    DISCUSSION

### A. Standard of Law

The False Claims Act permits recovery of "reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d). In determining what constitutes a reasonable fee, the "most useful starting point" is the product of the "number of hours reasonably expended on the litigation multiplied by a reasonable

---

[1] Penn Highlands Healthcare, DuBois Regional Medical Center, Elk Regional Health Center, Inc., Clearfield Hospital, Brookville Hospital, Dr. Gary Ott, and Women's Care of Western Pennsylvania, LLC.

hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation, known as the lodestar, "is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). Even so, District Courts retain substantial discretion in the determination of what constitutes reasonable attorneys' fees under the lodestar method. *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) (internal citation omitted).

The burden rests with the party seeking fees to prove that they are reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). That party must submit evidence "supporting the hours worked and rates claimed." *Id.* Upon such a submission, the burden shifts to the party opposing the fee application to challenge the fee application's reasonableness. *McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir.2009) (citing *Rode*, 892 F.2d at 1183). In evaluating the reasonableness, the court must "go line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J*, 273 F.3d 346, 362 (3d Cir. 2001).

**B. Analysis**

<u>Hourly Rate</u>

A reasonable hourly rate is calculated according to the "prevailing market rates in the community." *Washington*, 89 F.3d at 1035. While the "attorneys' usual billing rate" provides a "starting point," it is "not dispositive." *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). The court must also consider "the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183. The party seeking attorneys' fees bears the burden of establishing "by way of

satisfactory evidence, in addition to the attorneys' own affidavits, that the requested hourly rates meet this standard." *Washington*, 89 F.3d at 1035.

Here, Defendants do not contest the general hourly rate of $825 proposed by the relators. Their objection is confined to the application of that rate in the distinct context of the relators' request for fees-on-fees—a discrete question we address separately. *See* ECF No. 64 at 12 ("Relators should only receive fees on fees at a discounted rate..."). In the absence of any challenge to the reasonableness of the underlying rate, and upon review of the record, including the supporting affidavits, we conclude the rate of $825 per hour is reasonable. *McKenna*, 582 F.3d at 459 (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir.1989) (A district court should not "decrease a fee award based on factors not raised at all by the adverse party.")).[2]

## Hours Reasonably Expended

After determining the appropriate hourly rate, the Court turns to an assessment of the number of hours reasonably expended by counsel during the litigation. *United States ex rel. Sharon McKinney v. DHS Techs., LLC*, 2015 WL 11675668, at *4 (M.D. Pa. Oct. 27, 2015), *report and recommendation adopted sub nom. United States v. DHS Techs., LLC*, 2016 WL 4592175 (M.D. Pa. Feb. 4, 2016). With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Windall*, 51 F.3d at 1188.[3] A court may also "reduce the award to account for the limited success" of a party and "make a percentage reduction[.]" *Institutionalized Juveniles*

---

[2] Defendants also do not explicitly object to the number of hours billed, nor the costs or expenses, rather they take a "limited" approach as discussed in detail later in this opinion.

[3] As noted, previously, Defendants do not argue that any items within the lodestar provided by the Relators were patently unreasonable, except for a vagueness argument also later addressed.

*v. Secretary of Pub. Welfare*, 758 F.2d 897, 925 n. 44 (3d Cir.1985); *see also Sallitt v. Stankus*, 2010 WL 2553887, at *2 (M.D. Pa. June 21, 2010)(collecting cases).

*Limited Success*

Defendants contend that Relators achieved only "limited success" in their claims and that the lodestar figure should be reduced accordingly. It is a fundamental principle that where a plaintiff prevails on some, but not all claims, the degree of success is a critical consideration in calibrating a reasonable attorneys' fee. As observed in *Hensely v. Eckerhart,* if a plaintiff fails on a claim "distinct in all respects from his successful claims," the time devoted to that unsuccessful claim should be excluded. 461 U.S. 424, 440 (1983). Conversely, a plaintiff who obtains "substantial relief" should not be penalized for failing to prevail on every contention. *Id.* The guiding instruction is that "the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.*

The application of this principle, however, is complicated by a settlement. Settlement agreements may not seek to resolve each claim or defense; indeed, "many settlement agreements will be informally structured with an eye toward the achievement of the overall objective, rather than the disposition of concrete claims." *Swan by Carello v. Daniels*, 917 F. Supp. 292, 299 (D. Del. 1995) (quoting *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564 (7th Cir.1983)). In such instances the specific *Hensley* analysis may prove "unworkable" despite its core mandate—that the fee must be reasonable in light of the success achieved. *Id.* If the claims do not bear a quantitative relationship to the result, the comparison becomes subjective. Additionally, the Government's decision not to intervene on some claims is not a commentary on the merits—or level of success—of relators' claims. To infer otherwise would be "antithetical to the text and

purpose" of the qui tam provision. *United States v. Kindred Healthcare, Inc.*, 517 F. Supp. 3d 367, 381–82 (E.D. Pa. 2021).

For these reasons the *Hensley* Court expressly rejected a mechanical comparison approach to fee reductions. 461 U.S. at 435 n. 11 (upholding the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon."). Instead, in a scenario like this the Court must evaluate and make appropriate adjustments based on a true "results obtained" analysis rather than attempt to make inferences about the merits of the Relators' claim.

<u>Results Obtained</u>

As noted previously, a plaintiff who has obtained "substantial relief" is generally entitled to full compensation for the legal work reasonably expended to achieve that success. *Hensley*, 461 U.S. at 449 n. 8.

The resolution of this case was achieved by a stipulated dismissal of all claims, contingent upon the terms of a settlement agreement. ECF No. 55. That agreement released Defendants from liability to the United States for "Covered Conduct"—specifically, a $420,000 payment for "employment services" made to Gary Ott, M.D., and Heather Sholtis, D.O.—in exchange for a payment of $735,000. ECF No. 51. This is the sole claim upon which the Government elected to intervene.

Relators appear to contend that the settlement's global release of claims precluded a fuller victory on the merits. We find this argument unpersuasive. The agreement expressly preserves Relators' claim for attorneys' fees, and while a settlement is not an adjudication on the merits, Relators themselves assented to the dismissal of their other claims. They cannot now assign fault to Defendants for insisting on a comprehensive resolution and then assert that the outcome was

limited by that very choice. Moreover, Relators' characterization of the agreement is imprecise. The central release was between the Defendants and the United States; Relators were not indispensable parties to that accord and retained the ability to pursue their remaining claims separately.

Upon consideration, we conclude that the result obtained by the Relators—a settlement wherein $420,000 is designated as restitution and from which they received $154,350 after eight years of litigation— is not the degree of "significant" or "substantial" success contemplated by *Hensley* as warranting a fully compensated lodestar. Indeed, a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Hensley,* at 440. As such, this Court elects to reduce the Relators' lodestar by 25% which tracks with the scope of the litigation and the results ultimately obtained. *See, e.g.*, *Sallitt*, 2010 WL 2553887, at *2.

### Unreasonably Vague Time Entries

Defendants next contend that vagueness of Relators' time entries prevents Defendants— and, likewise, this Court—from identifying and assessing the "reasonableness" of the fees. ECF No. 64 at 11. The Court may deduct hours when the fee petition inadequately documents the hours claimed. *Rode*, 892 F.2d at 1183. The Court has reviewed the billing submitted by Relators line-by-line, and does not find them to be vague when considered alongside the adjacent time entries. Therefore, this Court will not exclude them under this rationale. Indeed, a "general subject matter" of time expenditures is sufficient. *Hensley*, 461 U.S. at 437 n. 12.

### Fees on Fees

A prevailing party may recover attorneys' fees reasonably incurred in preparing a successful fee petition. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253,

268 (3d Cir. 2002). Here, the Relators seek compensation for 23.7 hours of work, amounting to $19,552.50, expended in pursuing this fee award.

The Defendants contend that the claimed hourly rate is unreasonable, given what they characterize as the "comparative simplicity of the task." While the Court acknowledges that fee petitions are often less complex than the underlying litigation, the reasonableness of the rate must be assessed against the work performed. The petition necessitated the drafting of a substantive pleading, the organization of exhibits, and legal research, particularly in light of the subsequent opposition briefing and reply. Given the length and quality of the submissions, the Court does not find that the nature of the task warrants a reduction in the hourly rate. *See e.g.*, *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1201 (E.D. Pa. 1990) (describing the elements considered involving a 204.5-hour fee petition).

Furthermore, courts in this district have regularly granted petitions to plaintiffs for time spent drafting the fee petition in dollar amounts similar to Relators' request. *See, e.g.*, *Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175, at *6 (D.N.J. Mar. 26, 2015) (approving $45,130 to prepare fee petition); *Walker v. Verizon Pennsylvania LLC*, 2017 WL 3675384, at *13 (E.D. Pa. Aug. 25, 2017) (approving $20,125 to prepare fee petition).

## IV.    CONCLUSION

For the foregoing reasons, the Court reduces the Relators' requested lodestar of $179,508.75 by 25% to $134,631.55, reflecting the degree of success achieved in the litigation phase. The Relators' petition for fees on fees is granted in the amount of $19,552.50. Accordingly, the total award is $154,184.05. An appropriate order follows.